UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY MONIQUE TAYLOR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 1:22-cv-00215-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND**<br><br>(Docs. 17, 19) |

**INTRODUCTION**

Plaintiff Sandy Monique Taylor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 11, 20, 21.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed an application for supplemental security income on April 6, 2017. AR 37, 207.[2] Plaintiff alleged that she became disabled on July 29, 1997,[3] due to congenital heart failure at birth, pulmonary-atresia, ventricular tachycardia, atrioventricular block, pacemaker revision, palpitations, chest pain, lightheadedness, obesity, hearing loss in left ear, anemia, asthma, depression, and heartbeat out of rhythm. AR 114, 210. Plaintiff's application was denied initially and on reconsideration. AR 114-18, 120-24. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Duane D. Young issued an order denying benefits on June 1, 2020. AR 34-45, 50-73. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Young's decision the Commissioner's final decision. AR 23-27. This appeal followed.

### Hearing Testimony

ALJ Young held a hearing on November 22, 2019, in Fresno, California. Plaintiff appeared with her attorney, Zachary Ishikawa. Cheryl Chandler, an impartial vocational expert ("VE"), also appeared and testified. AR 52-53.

In response to questions from the ALJ, Plaintiff testified that she received a high school diploma. She has never worked. She has a combined pacemaker and a defibrillator implantation. She still has problems with heart palpitations, tachycardia, and fast heartbeat. She also has left ear hearing loss. She uses an inhaler for shortness of breath about once a month. She used to have migraines, but now has chronic headaches almost every day for which she takes prescribed ibuprofen and naps. When she has a headache, she cannot concentrate. She was enrolled in college, taking two classes for six units. AR 55-60.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3] The alleged onset date was amended to the application date of April 6, 2017. AR 55.

When asked about the effect of her cardiac conditions, Plaintiff testified that she does not really run, and walking and physical activity give her fatigue. She is exhausted and has chest pains. She estimated she could lift and carry a maximum of about 30 pounds and could lift 20 pounds occasionally. She could sit about 45 minutes to 1 hour and stand about 30 minutes at one time. She could walk about half a block before she would have to rest. She has chest pains on a daily basis, which can last from 10 minutes to an hour. Walking and going to the grocery store trigger her pain. AR 60-62.

In response to questions from her attorney, Plaintiff testified that she has daily symptoms of lightheadedness and dizzy spells. They can be caused by her medicines, or they can come on suddenly without any exertion, and can last up to ten minutes. AR 62-63.

When asked about attending college, Plaintiff testified that her mom drops her off in front of the classroom or the school has a tram, which picks her up. She would be able to make it to class if she had to park in the parking lot. Her classes generally last an hour. If her classes lasted more than an hour, then she would have more absences. In her classes, she is allowed to leave or take breaks. AR 63-65.

Plaintiff further testified that after showering and putting on her clothes, she will have chest pain and get lightheaded. Her pacemaker causes her physical pain in her top left shoulder, and she can lift less than ten pounds overhead with her left shoulder. She has tachycardia on a weekly basis, which lasts for a few minutes, causing chest pain and sometimes fatigue. It typically takes 10 to 20 minutes to recover from an episode of tachycardia. AR 64-65. Plaintiff also reported that she takes Prozac for depression and anxiety. Her headaches, chest pain, heart palpitations and tachycardia affect her ability to concentrate and maintain attention in class. She also is constantly fatigued. AR 65-66.

Following Plaintiff's testimony, the ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a younger individual with a high school education capable of a full range of light work who must avoid working at unprotected heights and have no more than occasional exposure to other workplace hazards. The VE testified that there would be available jobs for this individual, such as cashier II, ticket seller, and storage facility rental clerk. AR 67-68.

For the second hypothetical, the ALJ asked the VE to consider the same baseline limitations as in hypothetical one except dropping it from light to sedentary work and adding that the individual must avoid climbing ladders, ropes, or scaffolding, have no more than occasional climbing of ramps and stairs, and must avoid exposure to greater than moderate noise levels, with moderate levels as defined by the Dictionary of Occupational Titles ("DOT").  The VE testified that there would be jobs for this individual, such as election clerk, document preparer, and charge account clerk.  AR 68-69.

For the third hypothetical, the ALJ asked the VE to consider the same limitations as in hypothetical two, but the person must be allowed to take unscheduled breaks as needed up to 20 minutes in duration.  The VE testified that unscheduled breaks would not be tolerated if lasting a duration of 20 minutes.  AR 69.

For the fourth hypothetical, Plaintiff's attorney asked the VE to add to hypothetical two that the individual would be unable to reach overhead with the left hand.  The VE testified that the identified jobs would still be available.  The VE further testified that an individual could be absent one or two days per month and still be considered employable.  For unskilled jobs, one absence per month would be the absolute maximum.  AR 70.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 37-45.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2017, the application date.  AR 39.  The ALJ identified the following severe impairments:  tetralogy of Fallot with pulmonary atresia, status post pacemaker and cardiac defibrillator implantation, heart palpitations, ventricular tachycardia, obesity, and left ear hearing loss.  AR 39-40.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments, expressly considering section 2.10, 3.03, 4.02, 4.05, and 4.06.  AR 40.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry no more than 10 pounds, stand and walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. She was precluded from working at unprotected heights or having more than occasional exposure to other workplace hazards. She should avoid climbing ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. She also should avoid more than moderate noise levels. AR 40-43. With this RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform, such as election clerk, document preparer, and charge account clerk. AR 44. The ALJ therefore concluded that Plaintiff had not been under a disability since April 6, 2017, the date the application was filed. AR 45.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred at step three of the sequential evaluation by failing to fully evaluate relevant evidence and adequately explain his finding that Plaintiff did not meet or equal the requirements of Listings 4.02, 4.05, or 4.06.  Plaintiff also contends that the erred by (1) failing to find Plaintiff's anxiety and generalized anxiety disorder to be severe, (2) failing to reconcile conflicts between the VE's testimony, the DOT, and the mental RFC that should have limited Plaintiff to no more than simple routine or repetitive unskilled work, and (3) failing to offer legitimate reasons for rejecting Plaintiff's subjective complaints.  (Doc. 17 at p. 3.)

**A.  Step Three**

Plaintiff first argues that the ALJ failed to evaluate relevant evidence and adequately explain his finding at step three that Plaintiff did not meet or equal the requirements of listings 4.02 (chronic heart failure), 4.05 (recurrent arrhythmias), or 4.06 (symptomatic congenital heart disease). (Doc. 17 at p. 10.)

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Id.* (citing 20 C.F.R. § 404.1525); *see* 20 C.F.R. § 416.925(a).  If a claimant meets or equals

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

a listed impairment he or she will be found disabled at this step without further inquiry. *Id.* (citing 20 C.F.R. § 404.1520(d)); *see* 20 C.F.R. § 416.920(d).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. *Id.* "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs. 20 C.F.R. § 416.920(d).

Plaintiff primarily faults the ALJ for "fail[ing] to parse out the details of the listing requirements and explain how the medical evidence proved or disproved any of the elements required." (Doc. 17 at p. 11.)  Plaintiff complains that the ALJ used boilerplate language, compelling remand.  (*Id.* at pp. 11-12.)

Contrary to Plaintiff's argument, the ALJ was not required to explain why Plaintiff failed to satisfy each element of the pertinent listings at step three.  While the ALJ may not rely on mere boilerplate statements or summary conclusions, the ALJ is not required to make detailed findings in any particular section of the analysis. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) ("*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'").  An ALJ's detailed "evaluation of the evidence" suffices to create the "foundations on which the ultimate factual conclusions are based." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990);  *Rodriguez v. Kijakazi*, No. 1:21-cv-00249-JLT-BAM, 2022 WL 17415069, at *1 (E.D. Cal. Dec. 5, 2022) (rejecting argument that ALJ must make detailed finding regarding claimant's condition and limitations, and explicitly apply those to each element of the listing at step three).  In *Gonzalez v. Sullivan*, the Ninth Circuit considered the question of whether the ALJ erred by failing to state what evidence supported the conclusion that the claimant's impairments did not meet or exceed the Listing of Impairments. 914 F.2d 1200.  In considering that question, the Ninth Circuit held that "[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section

7

of the listing of impairments." *Id.* at 1201.  Instead, the Ninth Circuit found that the ALJ's four-page evaluation of the evidence was an adequate statement of the foundations on which the ultimate factual conclusions were based and upheld the step three finding. *Id.*  Here, as in *Gonzalez*, the ALJ completed an almost four-page examination of evidence relative to Plaintiff's cardiac impairments.[5] AR 40-43.

In asserting error at step three, Plaintiff does not argue that she meets or equals a particular listing.  Rather, Plaintiff suggests only that listings 4.04 and 4.06 may be applicable.[6] (Doc. 17 at p. 11 ["Plaintiff notes that Listing 4.04 may be applicable;" "Listing 4.06 may also be applicable."].)  As to listing 4.04, Plaintiff asserts that she "presents with chest pain despite following treatment, and has marked exercise intolerance, being able to complete only 3 minutes, 45 seconds before experiencing tachycardia." (*Id.*, citing AR 1153, 1620.)  Plaintiff does not identify which of the 4.04 criteria that is purportedly applicable, *e.g.*, 4.04(A), 404(B), or 4.04(C).  It is assumed Plaintiff is referencing the "A" criteria of listing 4.04 because of her citation to evidence regarding exercise tolerance.  However, Plaintiff does not explain how she meets listing 404(A), which requires a sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at workload equivalent to 5 METs or less:

1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least −0.10 millivolts (−1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than a VR, and depression of at least −0.10 millivolts lasting for at least 1 minute of recovery; or

2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in noninfarct leads during both exercise and 1 or more minutes of recovery; or

3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or

---

[5] Plaintiff makes clear that she is not asking the Court to reweigh the relevant evidence.  (Doc. 17 at p. 12 ["Importantly, Plaintiff is not asking this Court to reweigh the evidence."].)  The Court therefore will not reweigh the ALJ's evaluation of the relevant evidence.

[6] Plaintiff mentions listing 4.02 and 4.05 in the heading, but the argument itself does not include a specific discussion of either of these listings.

> 4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

20 C.F.R. Part 404, Subpt. P, App. 1 § 4.04(A). Because Plaintiff does not explain which of these requirements her exercise tolerance meets, she has not met her burden of proving that her impairments satisfy listing 4.04(A).

Plaintiff also argues that she may meet the requirements of listing 4.06(A). However, 4.06(A) requires, "Cyanosis at rest, and: 1. Hemocrit of 55 percent or greater; or 2. Arterial $O_2$ saturation of less than 90 percent in room air, or resting arterial $PO_2$ 60 Torr or less." 20 C.F.R. Part 404, Subpt. P. App. 1 § 4.06(A). Although Plaintiff cites her cardiopulmonary exercise testing, including her oxygen intake, pulmonary status, and respiratory rate, she does not cite to evidence of cyanosis at rest as required to meet listing 4.06(A), nor does she explain how she meets the remaining criteria of 4.06(A). (Doc. 17 at p. 11, citing AR 1153.) Plaintiff has not met her burden of proof.

For these reasons, the Court does not find reversible error at step three of the sequential evaluation.

**B. Step Two – Mental Impairments**

At step two, the ALJ determined that Plaintiff suffered from the severe impairments of tetralogy of Fallot with pulmonary atresia, status post pacemaker and cardiac defibrillator implantation, heart palpitations, ventricular tachycardia, obesity, and left ear hearing loss. AR 39-40. Plaintiff contends that the ALJ erred at this step by failing to find her established impairments of anxiety and generalized anxiety disorder to be severe, which resulted in an incomplete RFC assessment. (Doc. 17 at p. 12.)

At step two of the five-step sequential evaluation, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 416.920(c). An impairment, or combination of impairments, can be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a

disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in the RFC determination at step four. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

The Court does not find that the ALJ committed reversible error at step two for multiple reasons. First, the state agency medical consultants did not identify any severe mental impairments or mental functional limitations. AR 93-94, 107-08. Second, Plaintiff relies on a consultative examination conducted in May 2016 by Ekram Michel, M.D., which included a diagnosis of adjustment disorder with mixed emotional features, depression and anxiety. (Doc. 17 at p. 13, citing AR 1104-07.) However, Dr. Michiel's opinion is of limited probative value as it predates Plaintiff's amended alleged onset date of April 6, 2017 (AR 55). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Third, Plaintiff relies on evidence of her self-reported symptoms to Dr. Patrick Burke on August 9, 2018, and March 29, 2019, and her self-reported symptoms on an Anxiety Screening Tool completed June 15, 2019. (Doc. 17 at p. 13, citing AR 1691 ["feeling nervous, anxious or on edge,"] 1752-53 ["reports anxiety and difficulty sleeping"], 1772-73 ["She reports restless sleep and anxiety."]. These reports are not sufficient to establish the existence of an anxiety-related impairment. *See* 20 C.F.R. § 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)"). The reports also do not meet the durational requirement. In order to be severe at step two, an impairment must satisfy the "duration requirement" and "must have lasted or must be expected to last for a continuous period of at

10

least 12 months." *See* 20 C.F.R. §§ 416.909; 416.920(a)(ii).  Moreover, the cited records from Dr. Burke do not identify a diagnosed mental impairment of anxiety or generalized anxiety disorder, nor do they identify any mental functional limitations.   AR 1773, 1752-53.  Although Dr. Burke commented on "uncontrolled anxiety" in August 2018 (AR 1773), he did not identify any notable psychological symptoms on examination in either August 2018 or March 2019.  AR 1752 ("very slightly restricted affect"), 1772-73.  Further, the Anxiety Screening Tool completed in June 2019 revealed a score of "mild," and a corresponding medical examination completed on the same date found Plaintiff "alert and cooperative" with "normal mood and affect" and "normal attention span and concentration."  AR 1689, 1691.  Finally, Plaintiff does not cite to medical opinions for the relevant period identifying any severe mental impairments or mental functional limitations.

### C.  Conflicts between VE Testimony, DOT, and Mental RFC

Plaintiff argues that the ALJ erred at step five of the sequential evaluation in failing to resolve the apparent conflict between the DOT and the VE's testimony that Plaintiff could perform the representative jobs of election clerk (205.367-030), document preparer (249.587-018), and charge account clerk (205.367-014).

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a step five finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.920(g). ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

"[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435.  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486

F.3d 1149, 1152–53 (9th Cir. 2007). The ALJ's duty to inquire is triggered if the conflict between the VE's testimony and the DOT's job description is "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.* "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1153-54).

Plaintiff contends that there is a conflict between her limitation to simple, routine, and repetitive work and the requirements of the representative jobs proffered by the VE, which require DOT Reasoning Level 3. (Doc. 17 at pp. 15-16.); *see* Election Clerk, DICOT 205.367-050, 1991 WL 671719; Document Preparer, DICOT 249.587-018, 1991 SL 672349; Charge-Account Clerk, DICOT 205.367-014, 1991 WL 671715.  The Ninth Circuit has held that there is an apparent conflict between a limitation to simple, routine, repetitive tasks and "the demands of Level 3 Reasoning." *Zavalin*, 778 F.3d at 847.  Here, however, because the RFC did not include a limitation to simple, routine, and repetitive work, there can be no conflict with the level three reasoning requirements of the identified jobs.

Plaintiff's argument instead appears to be that the RFC should have included a limitation to simple, routine and repetitive work based on the severity of her insomnia, depression, and anxiety.  An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record.").  Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-CV-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022).  "In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints.*" Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *4 (E.D. Cal. June 1, 2023) (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197

12

(9th Cir. 2004)). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ expressly noted that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff was disabled or had limitations greater than those determined in the ALJ's decision. AR 43. Likewise, Plaintiff does not identify any medical opinions from the relevant period supporting a cognitive limitation to simple, routine, and repetitive work. As noted above, the state agency physicians found that Plaintiff did not have a severe mental impairment and they did not identify any cognitive limitations. AR 93-94, 107-08. Insofar as Plaintiff bases the proposed cognitive limitations on her subjective complaints, the ALJ properly discounted her subjective testimony, as discussed in greater detail below. The Court finds that the ALJ did not err by failing to include cognitive limitations in the RFC for which there is inadequate support in the objective medical record.

For these reasons, the Court does not find reversible error at step five of the sequential evaluation.

**D.     Plaintiff's Subjective Complaints**

As a final matter, Plaintiff argues that "the ALJ failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms related to her fatigue, episodic chest pain and cognitive impairments." (Doc. 17 at p. 17.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity,

persistence and limiting effects of those symptoms.  AR 43.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints.  First, the ALJ discounted Plaintiff's statements regarding her symptoms because they were inconsistent with the objective medical record.  AR 43.  "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). For instance, Plaintiff reported tachycardia episodes every week, but the ALJ determined that recent evidence indicated such episodes only occurred about every two weeks.  AR 43, 1787.  The ALJ also noted that the record did not include any opinions from treating or examining physicians indicating she was disabled or had additional limitations beyond those included in the RFC.  AR 43.

Plaintiff argues that objective evidence of syncope, tachycardia, and fatigue warrants limitations for being off task and absenteeism.  (Doc. 17 at p. 19.)  However, the medical opinions from the state agency physicians and consultative examiner did not identify any such limitations.  AR 93-97, 107-110, 1671-75.  Further, the ALJ found the opinions of the state agency physicians regarding Plaintiff's physical RFC "somewhat persuasive," and the opinion of the consultative internist, Dr. Roger Wagner, "very persuasive."  AR 41, 43, 1671-75.  Dr. Wagner evaluated Plaintiff on July 6, 2019, and opined that Plaintiff could lift/carry 11-20 pounds occasionally, 10 pounds frequently, could stand and/or walk up to four hours with normal breaks, could sit with no limitations, could climb stairs, ramps, ladders, or scaffolds occasionally, could stoop frequently, and could be exposed to moderate noise or less given her left ear hearing problems.  AR 1675.  Dr. Wagner did not identify any other limitations.  Plaintiff does not challenge the ALJ's evaluation of or reliance on the medical opinion evidence, including that of Dr. Wagner.  Nor does Plaintiff cite medical opinions identifying any additional non-exertional limitations not included in the RFC.

Second, the ALJ discounted Plaintiff's subjective testimony based on her unsupported and inconsistent statements.  As examples, the ALJ identified not only the inconsistency relative to her tachycardia episodes, but also her attendance at Fresno City College, noting the college was unable to

14

locate any records in support of her allegation. AR 43. An ALJ may employ ordinary techniques of credibility evaluation, such as considering claimant's inconsistent statements and other testimony by the claimant that appears less than candid. *See*, *e.g.*, *Moreno v. Comm'r of Soc. Sec.*, No. 1:19-cv-01580-SAB, 2021 WL 84376, at *6 (E.D. Cal. Jan. 11, 2021) (citations omitted). Indeed, inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, are relevant in evaluating subjective symptom testimony. *See Bradley P v. Kijakazi*, No. EDCV 21-00298-AS, 2022 WL 5048317, at *4 (C.D. Cal. Mar. 24, 2022), citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

Third, the ALJ considered that Plaintiff's subjective complaints were inconsistent with her ability to function adequately and perform many basic activities associated with work. AR 43. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*. In this case, the ALJ noted Plaintiff's reports about attending school and her ability to complete her activities of daily living, AR 41, 43. As to her daily activities, the ALJ relied on the consultative evaluation by Dr. Wagner. AR 41, 1671-75. Plaintiff reported to Dr. Wagner that she cooks and cleans, drives, shops, performs her own activities of daily living without assistance, walks some for exercise, and attends city college during the school year. AR 1672. Plaintiff's activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. Molina, 674 F.3d at 1113.

Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle*, 533 F.3d at 1161-63 (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid

reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment or remand (Doc. 17) is DENIED;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is DENIED; and
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Sandy Monique Taylor.

IT IS SO ORDERED.

Dated:   **October 25, 2023**              /s/ *Barbara A. McAuliffe*              
UNITED STATES MAGISTRATE JUDGE